No. 2016-2223

# United States Court of Appeals
# for the Federal Circuit

TRADING TECHNOLOGIES INTERNATIONAL, INC.,

*Plaintiff-Appellant*,

v.

ROSENTHAL COLLINS GROUP, LLC, TRADESTATION SECURITIES, INC., IBG LLC, INTERACTIVE BROKERS LLC, FUTUREPATH TRADING, LLC, TRADESTATION GROUP, INC.,

*Defendants-Appellees*,

AND

TRADEHELM, INC.,

*Defendant*.

Appeal from the United States District Court for the Northern District of Illinois in consolidated case no. 10-cv-0715, Judge Virginia M. Kendall

**SECOND CORRECTED OPENING BRIEF OF PLAINTIFF-APPELLANT TRADING TECHNOLOGIES INTERNATIONAL, INC.**

LEIF R. SIGMOND, JR.
MICHAEL D. GANNON
JENNIFER M. KURCZ
COLE B. RICHTER
**MCDONNELL BOEHNEN
HULBERT & BERGHOFF LLP**
300 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606
TEL.: (312) 913-0001

STEVEN F. BORSAND
TRADING TECHNOLOGIES INTERNATIONAL, INC.
222 SOUTH RIVERSIDE
CHICAGO, ILLINOIS 60606
TEL.: (312) 476-1000

*Attorneys for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Trading Technologies Intl.           **v.**           Rosenthal Collins Group, LLC

Case No.          2016-2223

## CERTIFICATE OF INTEREST

Counsel for the:

☐ (petitioner) ☒ (appellant) ☐ (respondent) ☐ (appellee)☐ (amicus)☐ (name of party)

Appellant

certifies the following (use "None" if applicable; use extra sheets if necessary):

| 1. Full Name of Party Represented by me | 2. Name of Real Party in interest (Please only include any real party in interest NOT identified in Question 3) represented by me is: | 3. Parent corporations and publicly held companies that own 10 % or more of stock in the party |
|---|---|---|
| Trading Technologies International, Inc. | Trading Technologies International, Inc. | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

4.   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (**and who have not or will not enter an appearance in this case**) are:

McDonnell Boehnen Hulbert & Berghoff LLP: Leif R. Sigmond, Jr., Alan Wayne Krantz, Andrea Kay Orth, Ann C. Palma, Brandon J. Kennedy, Christopher D. Butts, Cole Bradley Richter, Jennifer M. Kurcz, Kristen L. Thomson, Marcus Jay Thymian, Matthew J. Sampson, Michael David Gannon, Paul A. Kafadar, S. Richard Carden, Sarah Emily Fendrick,
Trading Technologies International, Inc.: Steven F. Borsand

July 25, 2016

Date

/s/ Cole B. Richter

Signature of counsel

Please Note: All questions must be answered

Cole B. Richter

Printed name of counsel

cc:

Reset Fields

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS......................................................................... ii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF RELATED CASES ....................................................1

JURISDICTIONAL STATEMENT .........................................................4

STATEMENT OF THE ISSUES..............................................................5

STATEMENT OF THE CASE..................................................................6

STATEMENT OF FACTS ......................................................................11

    I.      THE PATENTS-IN-SUIT....................................................11

    II.     TRADESTATION AND IB'S STRATEGY OF PIECEMEAL LITIGATION AND DELAY, AND THEIR ABUSE OF THE AIA'S STAY PROVISION TO THAT END ....................................13

          A.     Early Summary Judgment Practice and the First Stay .............14

          B.     The First Round of CBMs and the Second Stay .......................16

          C.     The Second Round of CBMs and the Third Stay.....................20

SUMMARY OF THE ARGUMENT .....................................................24

ARGUMENT ........................................................................................27

    I.      STANDARD OF REVIEW.................................................27

    II.     THE DISTRICT COURT ERRED IN GRANTING A STAY ...........28

          A.     The District Court Erred By Not Weighing TradeStation's and IB's Abuse of the CBM Process And The Clear Tactical Advantage Awarded (Third Factor) ..........29

B.    The District Court Erred By Weighing The Stage of the Case In Favor of a Stay When This Case Is Six Years Old And There Have Been Several Stays Already (Second Factor) ..........................................................................38

C.    The District Court Erred By Finding That A Stay Would Materially Simplify Issues or Streamline Trial Because Only Six of Twelve Patents-In-Suit Are Subject to CBM Proceedings  (First Factor) .......................................................41

D.    The District Court Erred By Finding That A Stay Reduces the Litigation Burden for the Parties or This Court (Fourth Factor)...............................................................45

CONCLUSION AND STATEMENT OF RELIEF SOUGHT .............................47

CERTIFICATE OF SERVICE .................................................................49

CERTIFICATE OF COMPLIANCE .........................................................50

# TABLE OF AUTHORITIES

## CASES

*Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers Inc.*,
    767 F.3d 1383 (Fed. Cir. 2014) ........................................................ 27

*Chi. Bd. Options Exch. v. Intl. Secs. Exch.*,
    No. 2015-1728 (Fed. Cir. argued Mar. 10, 2016) ............................ 43

*Credit Card Fraud Control Corp. v. Maxmind, Inc.*,
    3:14-CV-3262-M, 2015 WL 1879747, at *5 (N.D. Tex. Apr. 24, 2015) ......... 41

*Davol, Inc. v. Atrium Medical Corp.*,
    No. 12-958-GMS, 2013 WL 3013343, (D. Del. June 17, 2013) ...................... 41

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ........................................................ 19

*Nken v. Holder*,
    556 U.S. 418 (2009) ........................................................................ 28

*Segin Sys., Inc. v. Stewart Title Guar. Co.*,
    30 F. Supp. 3d 476, 485 (E.D. Va. 2014) ........................................ 45

*Smartflash LLC v. Apple Inc.*,
    621 Fed. Appx. 995, 1003 (Fed. Cir. 2015) ................................... 30, 31, 32, 40

*TradeStation Technologies, Inc. v. Trading Technologies Int'l., Inc.*,
    Case No. 16-cv-60296 (S.D. Fla. Feb. 16, 2016) ................................. 3

*Trading Technologies Intl., Inc. v. CQG, Inc.*,
    05-CV-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015) ........................ *passim*

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) .................................................... 1, 12

*Trading Techs. Intern., Inc. v. Sungard Data Sys., Inc.*,
    2015-1767, 2016 WL 1295929 (Fed. Cir. Apr. 4, 2016) ........................ 2

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) .................................................... *passim*

## STATUTES

28 U.S.C. § 1331 ................................................................................4

28 U.S.C. § 1338 ................................................................................4

35 U.S.C. § 103 ........................................................................... 19, 42

35 U.S.C. § 321 ................................................................................4

35 U.S.C. § 324 ............................................................................... 43

37 C.F.R. § 42.207 ........................................................................... 34

37 C.F.R. § 42.300(c) .................................................................. 34, 35

Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA") ......................................... *passim*

## OTHER AUTHORITIES

79 Fed. Reg. 74,618 (Dec. 16, 2014) ....................................................... 19

**STATEMENT OF RELATED CASES**

In 2008, this Court heard appeals involving U.S. Patent Nos. 6,722,132 ("the '132 patent") and 6,766,304 ("the '304 patent") in Case Nos. 2008-1392, -1393, and -1422 ("the *eSpeed* case"). On February 25, 2010, this Court (the panel consisting of Judges Rader, Lourie, and Clark) issued its opinion. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340 (Fed. Cir. 2010) ("the *eSpeed* decision"). The '132 and '304 patents are being asserted in the consolidated cases in the district court from which this appeal is taken. However, the issues in the 2008 appeal are not relevant in the present appeal.

In 2011, this Court heard another appeal in the *eSpeed* case in Case No. 2011-1424 regarding the issue of jurisdiction and damages. On June 6, 2012, this Court (the panel consisting of Judges Rader, Lourie, and Wallach) issued its opinion. Again, the issues in that appeal are not relevant in the present appeal.

In 2013, this Court heard an appeal (Case No. 2012-1583) from the consolidated district court cases from which the present appeal is taken regarding issues of written description and prosecution history estoppel for U.S. Patent No. 7,685,055 ("the '055 patent") and U.S. Patent No. 7,676,411 ("the '411 patent"). On August 30, 2013, this Court (the panel consisting of Judges Lourie, Plager, and Benson) issued its opinion reversing the district court's entry of summary judgment of invalidity of the '411 (and related patents) and remanded the case

1

back to the district court for further proceedings.  The Court also reversed the district court's summary judgment of invalidity for the '055 patent and found that the '055 claims are adequately supported, removing this defense from the case. The issues in that appeal are not relevant in the present appeal.

In 2015, an appeal (Case No. 15-1277) was pending before this Court regarding a district court denial of a stay pending CBM Review of the '132 patent. That appeal was dismissed before oral argument as a result of PTAB termination of the CBM Review proceedings.

Also in 2015, an appeal (Case No. 15-1664) was pending before this Court from the consolidated district court cases from which the present appeal is taken. That appeal involved a district-court-ordered stay pending CBM Review of the '132, '411, '056, and '055 patents.  That appeal was dismissed before oral argument as a result of PTAB termination of the CBM Review proceedings.

In 2016, this Court heard an appeal involving the '304 and '132 patents in Case Nos. 2015-1767 and -1768. *Trading Techs. Intern., Inc. v. Sungard Data Sys., Inc.*, 2015-1767, 2016 WL 1295929, at *1 (Fed. Cir. Apr. 4, 2016) (Lourie, Bryson, and Reyna).  The issues in that appeal are not relevant in the present appeal.

Currently pending before this Court, in Case No. 16-1616, is an appeal regarding patent-eligible subject matter under 35 U.S.C. § 101 of the '132 and

'304 patents.  This appeal has not yet been calendared as briefing is still underway.

In addition to the consolidated cases in the district court from which this appeal is taken, the following cases are also currently pending at the district court:

• *TradeStation Technologies, Inc. v. Trading Technologies Int'l., Inc.*, Case No. 16-cv-60296 (S.D. Fla. Feb. 16, 2016).

## JURISDICTIONAL STATEMENT

The district court has and continues to have subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  On May 9, 2016, the district court entered an order staying the consolidated cases pending CBM Reviews of a subset of the patents-in-suit by the United States Patent and Trademark Office ("USPTO").  This order was subsequently modified on May 11, 2016.  TT timely filed a notice of appeal on May 17, 2016.

This Court has appellate jurisdiction for this appeal pursuant to Section 18(b)(2) of the Leahy-Smith America Invents Act.  35 U.S.C. § 321; Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA").  Specifically, Section 18(b)(2) permits a party to "take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo."  *Id*. at § 18(b)(2).

# STATEMENT OF THE ISSUES

Whether the district court erred in staying this case a third time pending CBM Review where (i) only a subset of the twelve asserted patents-in-suit are undergoing instituted CBM Review proceedings; (ii) the case has been stayed two other times due to TradeStation and IB's tactics; and, as a result, (iii) the factors enumerated in Section 18(b)(1) of the Leahy-Smith America Invents Act weigh heavily against a stay.

## STATEMENT OF THE CASE

In February 2010, TT brought separate patent infringement lawsuits against the Appellees, which were consolidated into one case. Appx3097. Prior to any fact discovery, TradeStation and IB (along with the other Defendants) moved for summary judgment that, *inter alia*, the '411 and U.S. Patent No. 7,533,056 ("the '056 patent") were invalid under 35 U.S.C. § 112 ¶ 1 and that prosecution disclaimer and prosecution history estoppel apply to eight of the then-sixteen patents-in-suit. Appx5632-5635, Appx14129, Appx14328-14329. All discovery was stayed during consideration of this summary judgment motion. Appx6417-6421.

In February 2012, the district court entered summary judgment in favor of TT that the '056 patent meets the written description requirement of 35 U.S.C. § 112 ¶ 1. Appx21486. The district court also entered summary judgment invalidating certain of the asserted patents including the '411 patent and the '055 patent. Appx21486. TT immediately appealed that ruling to this Court. Appx21735-21736, Appx21929-21931, Appx22305, Appx22328. There was no discovery permitted during the appeal.

In August 2013, this Court reversed the district court's entry of summary judgment of invalidity of the '055 patent and ruled on the merits that the '055 claims had adequate written description support. The Court also reversed the

district court's entry of summary judgment of invalidity of the '411 and other patents at issue, and remanded the case for further proceedings on the underlying merits of the written description issue. Appx22548-22573. Upon remand, in February 2014, TradeStation and IB (along with the other Defendants) again moved for summary judgment of invalidity of the '411 patent, this time on the underlying merits of the written description issue, which TradeStation and IB contended was "dispositive." Appx22580-22581, Appx23331.

In April 2014, the district court denied TradeStation and IB's second summary judgment motion and requested a schedule from the parties. Appx23506. However, in early May 2014, before a schedule was entered, TD Ameritrade, Inc., TD Ameritrade Holding Corp., and thinkorswim Group, Inc. (collectively referred to as "TD") notified the district court and all parties that TD intended to file CBM petitions. Appx28291-28292. Shortly after this, TD followed through with this plan, filing petitions for CBM Review of a small subset of the fifteen patents TT had asserted against TD and of the sixteen patents then pending in the consolidated case. Appx23653 ('304 patent), Appx23743 ('132 patent), Appx23830 ('056 patent), Appx23915 ('411 patent), Appx24002 ('055 patent). TD then moved the district court for a stay of the consolidated cases in their entirety pending CBM Review. Appx23547. The other defendants, including TradeStation and IB, joined in the motion to stay but did not join in

7

TD's CBM petitions or file any petitions of their own.  Appx24648, Appx24656-24659, Appx24708-24710.

In December 2014, the PTAB instituted CBM Review proceedings on four of the five TD CBM petitions.  Appx25951 ('056 patent), Appx25977 ('055 patent), Appx26006 ('132 patent), Appx26030 ('411 patent), Appx26054 ('304 patent (denying institution)).  In March 2015, the district court granted the motion to stay pending CBM Review.  Appx27019-27029.  The parties proceeded to fully brief the appeal and this Court added the case to the August 2015 calendar.

In July 2015, the PTAB terminated the TD CBM Reviews pursuant to a settlement between TT and TD.  Appx28747-28750.  TT immediately requested that the district court lift the stay but TradeStation and IB opposed, arguing that the stay should continue because they now intended to refile their own CBM petitions.  Appx28758-28762, Appx28763-28777.  The district court rejected this argument, lifted the stay, and the district court litigation resumed.  Appx28864-28866.  TT then moved to dismiss its appeal before this Court.  Appx28305-28306.

The district court ordered the parties to proceed with a schedule according to the Local Patent Rules on October 21, 2015.  Appx28864-28866.  The parties exchanged initial disclosures in November 2015.  TT served infringement contentions in December 2015.  And Defendants served Initial invalidity

8

contentions in January 2016.  The parties engaged in written discovery, massive document production totaling over a million pages, and prepared for depositions. While TT had noticed depositions to go forward in February and March 2016, Defendants delayed in producing requested document discovery and source code until April 2016, causing the parties to agree to push the depositions back until after TT had reviewed the source code and documents.

Despite being available to TradeStation and IB since September 2012 and despite TradeStation and IB having prior notice of and the opportunity to join TD's CBM petitions, TradeStation and IB only began preparing their own CBM petitions once it became clear that the district court litigation would continue after the first round of CBMs.  For instance, after the district court denied their request to continue the stay, TradeStation and IB began filing new CBM petitions on a rolling basis.  Particularly, from July 2015 to June 2016, TradeStation and/or IB staggered filings of CBM petitions on the twelve patents-in-suit, namely, the '304 (Appx27389), '556 (Appx27424), '056 (Appx27906-27995), '411 (Appx27549-27640), '132 (Appx27457-27547), '055 (Appx27642-27724), '996 (Appx27726-27812), '999 (Appx27814-27904), '374 (Appx28868-28922), '416 (Appx28923-29020), '768 (Appx29021-29101), and '382 (Appx29102-29182) patents.  In February 2016, when the PTAB had only instituted two of the now-instituted six CBM petitions, TradeStation and IB again moved the district court for what would

amount to the third stay since the litigation commenced in 2010.  Appx27034.

The district court granted this third stay in May 2016.  Appx1.  TT has appealed

here.

To date, the PTAB has instituted CBM Review on six of the twelve CBM

petitions filed, namely the CBM petitions for the '556 (Appx27424-27425), '056

(Appx28130-28131), '411 (Appx28213-28214), '132 (Appx28169-28170), '304

(Appx27389-27390), and '556 (Appx27424-27455) patents.  The PTAB has

instituted CBM Review on § 101 grounds for each of these six patents, and § 103

grounds for the '056, '411, '055, and '132 patents. [1]  CBM Review is currently

instituted on six of the twelve patents-in-suit against IB, and on five of the ten

patents-in-suit against TradeStation.

---

[1] Thus, two of the patents undergoing CBM Review (the '304 and '556 patents) are being reviewed solely for subject matter eligibility under 35 U.S.C. § 101.  A different judge in the same district court has already concluded that the '304 patent claims (and the '132 patent claims) are not directed to an abstract idea and, independently, included elements sufficient to transform the nature of the claim into a patent-eligible application. *Trading Technologies Intl., Inc. v. CQG, Inc*. ("the *CQG* case"), 05-CV-4811, 2015 WL 774655, at *4-5 (N.D. Ill. Feb. 24, 2015).  This patent-eligibility issue is presently pending before this Court in Case No. 16-1616.

## STATEMENT OF FACTS

## I.    THE PATENTS-IN-SUIT

There are twelve patents-in-suit.[2]  Appx10811-10849, Appx8921-8956.  All of these patents are generally directed to graphical user interface ("GUI") tools that can be used to trade electronically.  Appx34.  Although the individual claims of patents-in-suit are directed to different features of the GUIs accused of infringement, the same two products of each Defendant are accused across the twelve patents-in-suit.  Appx10811-10849, Appx8921-8956.  Moreover, because the patents-in-suit are all directed to the same general subject matter (GUI tools that can be used to trade electronically), the universe of potential prior art is the same for all of the patents-in-suit (although the specific prior art issues for each patent are different).

Notably, two of the asserted patents – the '132 and '304 patents – have been tested and upheld repeatedly at the Patent and Trademark Office and in the courts.  Appx24715.   For example, these patents were subjected to two quality reviews by the USPTO under what was then referred to as the "second set of eyes" program.

---

[2] The '132 patent (Appx37), the '304 patent (Appx15), the '056 patent (Appx124), the '055 patent (Appx179), the '411 patent (Appx157), U.S. Patent No. 7,412,416 (Appx94), U.S. Patent No. 7,212,999 (Appx62), U.S. Patent No. 7,693,768 (Appx227), U.S. Patent No. 7,725,382 (Appx247), U.S. Patent No. 7,783,556 (Appx267), U.S. Patent No. 7,813,996 (Appx287), U.S. Patent No. 7,904,374 (Appx306).

Appx24763-24809.  In October 2007, in *Trading Technologies Int'l. Inc. v.
eSpeed*, a jury found infringement and upheld the validity of the '132 and '304
patents.  Appx24715.  And on appeal, this Court affirmed on all counts.  *Trading
Techs. Int'l, Inc.*, 595 F.3d 1340.  After the *eSpeed* jury trial, these patents were
the subject of *ex parte* reexamination proceedings.  Appx24811-24821,
Appx24823-24831.  There, the USPTO again sustained the validity of the '132
and '304 patents over all the alleged prior art that was uncovered by a joint
defense group through years of formal and informal discovery.  *Id.*  In 2010, one
group of defendants, GL[3], filed a second request for reexamination of the '132
patent.  Appx24833-24857.  Notably, the PTO refused to even institute this
reexamination proceeding, despite the very low standard for institution at the
time.[4]  *Id.*  GL appealed and the USPTO affirmed the refusal to institute after
conducting a *de novo* review.  Appx24872-24890.

Most recently, in February 2015 the district court in the *CQG* case
concluded – after extensive briefing and a half-day hearing on the matter – that the
claims of the '132 and '304 patents are directed to patent eligible subject matter
under § 101.  2015 WL 774655, at *5.  In particular, the court found that the

---

[3] This group includes GL Trade Americas, Inc., SunGard Data Systems, Inc., and
SunGard Investment Ventures LLC (referred to herein as "GL").

[4]  The standard for institution of an *inter partes* reexamination was "whether the
petitioner raised a substantial new question of patentability."  Appx24836.

claims are not directed to an abstract idea and, independently, claim an inventive concept sufficient to make them patent-eligible.  *Id.*  And in March 2015, following a three-week jury trial in the same case, a jury found infringement of the '132 and '304 patents.  During trial, CQG did not even allege invalidity based on prior art.  At the close of evidence, the district court granted in favor of TT judgment as a matter of law that the '132 and '304 patents were not invalid under 35 U.S.C. § 112 for lack of written description support.  CQG has appealed that district court's ruling of patent-eligibility.  Briefing is underway in that appeal.

## II.   TRADESTATION AND IB'S STRATEGY OF PIECEMEAL LITIGATION AND DELAY, AND THEIR ABUSE OF THE AIA'S STAY PROVISION TO THAT END

In 2010, TT brought separate lawsuits against several direct competitors of TT.  These groups included:  (1) "OEC"[5]; (2) "FuturePath"[6]; (3) "IBG"[7]; (4) "CQG"[8]; (5) "SunGard"[9]; (6) "TD"[10]; and (7) "Tradestation."[11] [12]  Of these, only

---

[5] This group includes:  Open E Cry, LLC and Optionsxpress Holdings, Inc. Appx7393-7430.

[6] FuturePath Trading LLC.  Appx8614-8644.

[7] This group includes:  Interactive Brokers, LLC and IBG, LLC.  Appx10811-10849.

[8] This group includes:  CQG, Inc. and CQGT, LLC.  Appx8130-8170.

[9] This group includes:  SunGard Data Systems, Inc., SunGard Investment Ventures LLC, and GL Trade Americas, Inc.  Appx6428-6466.

[10] This group includes:  TD Ameritrade, Inc., TD Ameritrade Holding Corp., and thinkorswim Group, Inc.  Appx10347-10393.

TradeStation and IB have yet to settle.  In each suit, TT asserted some subset of the twelve patents-in-suit.

### A.    Early Summary Judgment Practice and the First Stay

In February 2011, the district court consolidated the separate actions into a single case.  Appx3097 (noting that "[s]ubstantial time and effort will be conserved by reassignment for discovery because the cases involve similar technology and reassignment would avoid inconsistent rulings for claim construction, invalidity, and infringement issues").  Shortly thereafter, and prior to engaging in any technical tutorial, any *Markman* proceedings, or even any discovery at all, TradeStation and IB moved for summary judgment that, *inter alia*, the '411 and the '056 patent were invalid under 35 U.S.C. § 112 ¶ 1.[13]  Appx5632-5635, Appx14129, Appx14328-14329.  TradeStation and IB requested that the district court stay all discovery during consideration of this summary judgment motion.  Appx6263-6284.  The district court granted this stay.  Appx6417-6421.

---

[11] This group includes:  TradeStation Securities, Inc. and TradeStation Group, Inc. Appx8921-8956.

[12] TT also brought suit against several other parties that subsequently settled with TT, namely Rosenthal Collins Group, LLC (Appx21279-21282); eSpeed Markets, L.P., BGC Capital Markets, L.P., Eccoware, Ltd., (Appx23356-23358); Cunningham Trading Systems, LLC, Cunningham Commodities, LLC (Appx3136); Tradehelm, Inc. (Appx5180-5181, Appx26489); Stellar Trading Systems, Ltd., and Stellar Trading Systems, Inc. (Appx22486-22542).

[13] TT cross-moved for summary judgment that the '056 patent meets the written

In February 2012, the district court entered summary judgment invalidating certain patents, including the '411 patent and the '055 patent.[14]  Appx21486.  TT immediately appealed that ruling to this Court.  Appx21735-21736, Appx21929-21931, Appx22305, Appx22328.  At the outset of the appeal, the parties informed the district court that the case could proceed with respect to any patents not at issue in the appeal.  Appx21735-21748.  However, the district court did not lift the stay and did not enter a case schedule.  *See* Appx26470-26472.  Further, TradeStation, IB, and the other defendants refused to engage in discovery during the appeal.  *See id.*

In August 2013, this Court reversed the district court's entry of summary judgment of invalidity of TT's patents, including the '411 and '055 patents, and remanded the case for further proceedings on the underlying merits of the written description issue for the '411 patent.  Appx22548-22573.  This Court also ruled in TT's favor on the merits of the '055 written description issue.  Upon remand, in February 2014, TradeStation, IB, and the other defendants moved again for summary judgment of invalidity of the '411 patent, this time on the underlying merits of the written description issue.  Appx22580-22581.  And again, IB and

---

description requirement of 35 U.S.C. 112 ¶ 1.  Appx14937-14938.

[14] The district court also entered summary judgment in favor of TT that the '056 patent meets the written description requirement of 35 U.S.C. § 112 ¶ 1. Appx21486.

15

other defendants asked the district court to stay all discovery pending disposition of that summary judgment motion.  Appx23370-23375, Appx23378-23383, Appx23385-23390, Appx23392-23398; *see also* Appx23360.  In support for staying all discovery, the parties contended that the '411 patent written description issue was an important issue because resolution thereof could greatly simplify the case, and impact two other asserted patents.  *See id.;* Appx23331, Appx23500-23502, Appx23371.

In April 2014, the district court denied this second summary judgment motion and requested a schedule from the parties.  Appx23506.  It was only then – after losing their request to yet again stay discovery pending resolution of the written description issue – that TD notified the district court and all parties that TD intended to file CBM petitions.  Appx28291-28292.

### B.    The First Round of CBMs and the Second Stay

In May 2014, before a schedule was entered, TD followed through with this plan filing petitions for CBM Review of just five[15] of the fifteen patents TT asserted against TD and of the sixteen patents then pending in the consolidated case.[16]  Appx23653, Appx23743, Appx23830, Appx23915, Appx24002.

---

[15] TD filed petitions for CBM Review of the '055, '056, '411, '132, and '304 patents.

[16] The CBM Review program went into effect in September 2012 during the first appeal of these consolidated cases mentioned above.  AIA § 18.  However, TD did

Tellingly, in its CBM filing, TD did not even bother challenging the '411 patent based on the written description issue – an issue that it had just previously presented to the district court as being dispositive and worthy of special early attention. *See* Appx23907-23994; Appx23331. On the other hand, TD did re-raise in their CBM petition for the '056 patent the identical written description issue that the district court *already rejected* on summary judgment. Appx23823-23906. Moreover, the CBM petitions did not address any of the parties' primary prior art references, so that if that CBM Review did not resolve in TD's favor, the parties would have had another bite at the invalidity apple with the district court. *See* Appx23653, Appx23743, Appx23830, Appx23915, Appx24002; AIA § 18(a)(1)(D).

In early summer 2014, while the PTAB was in the midst of deciding whether to institute CBM Review proceedings on the five TD petitions, TD moved for a stay of the consolidated cases in their entirety. Appx23547. TradeStation and IB joined in TD's motion to stay, but they did not join in TD's underlying CBM petitions. Appx24648, Appx24708. TradeStation and IB declined joining in the petitions, despite IB being represented by the same counsel as TD, and despite TradeStation and IB being on notice that TD intended to file CBM

---

not avail itself of CBM Review of any of TT's patents until after the district court denied TD's renewed motion for summary judgment and further request to stay

petitions prior to such filing. Appx28291-28292. TradeStation's and IB's failure to join TD's CBM petitions or even file their own CBM petitions can only be explained as a deliberate tactical move intending to benefit TradeStation and IB from TD's stay motion and the chance that the patents-in-suit be invalidated while not having to risk being subject to estoppel. Indeed, TradeStation and IB made a special point to highlight to this Court that they would not consent to be subject to any estoppel that would attach as a result of TD's CBM petitions. Appx28706.

Despite the parties fully briefing the stay motion by June 2014, s*ee* Appx25185-25208, Appx25881-25886, the district court did not enter a discovery schedule while it considered these motions, nor did it act on this motion until March 2015 when it granted the motions to stay the consolidated cases in their entirety. Appx27019. This nine-month delay by the district court awarded TD, TradeStation, IB, and the other defendants a *de facto* stay, for which TT was unable to exercise its right to interlocutory appeal. *See* AIA § 18(b)(2) (no right to interlocutory appeal until district court renders a "decision under paragraph (1)").

Meanwhile, in December 2014, the USPTO instituted CBM Review proceedings on four of the five TD CBM petitions. Appx25951, Appx25977, Appx26006, Appx26030, Appx26054. Specifically the USPTO instituted CBM Review on: (1) the '132 patent on the single issue of whether the claims are

_____

discovery.

directed to eligible subject matter under 35 U.S.C. § 101 (Appx26006), (2) the

'411 patent on the same single issue (Appx26030), (3) the '056 patent based on 35

U.S.C. §§ 101 and 103 grounds (Appx25973-25974), and (4) the '055 patent

based on 35 U.S.C. §§ 101 and 103 grounds (Appx26001-26002).[17]  *Id.*  The

USPTO declined to institute CBM Review proceedings for the '304 patent.

Appx26054.  The USPTO also declined to institute on any of the prior art grounds

raised with respect to the '132 and '411 patents.  Appx26006, Appx26030.

Once the district court entered the stay order in March 2015, TT

immediately appealed.  The parties proceeded to fully brief the appeal and this

Court added the case to the August 2015 calendar.  In July 2015, the PTAB

terminated the TD CBM Reviews pursuant to a settlement between TT and TD.

Appx28747-28750.  TT immediately requested that the district court lift the stay

but TradeStation and IB opposed, arguing that the stay should continue because

they now intended to refile their own CBM petitions.  Appx28758-28762,

---

[17]   At the time of the PTAB's CBM institution of review on § 101, the PTO and its
procedures regarding how to address § 101 were in a state of flux.  *See e.g.* 79 Fed.
Reg. 74,618, 74,618-33 (Dec. 16, 2014) (2014 Interim Guidance on Patent Subject
Matter Eligibility).  This institution also came before this Court's guidance on
patent-eligibility issues in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245
(Fed. Cir. 2014).  There, this Court held that claims that are "necessarily rooted in
computer technology in order to overcome a problem specifically arising in the
realm of computer networks" were indeed directed to patent-eligible subject matter.
*Id.* at 1257.   Tellingly, the district court in the *CQG* case – armed with (and citing
to) this guidance – held specifically that all claims of the '132 and '304 patents were

Appx28763-28777.  The district court rejected this argument, lifted the stay, and the district court litigation resumed.  Appx28864-28866.  TT then moved to dismiss its appeal before this Court.  Appx28305-28306.

The district court ordered the parties to proceed with a schedule according to the Local Patent Rules on October 21, 2015, Appx28864-28866, and the parties exchanged initial disclosures in November 2015, TT served infringement contentions in December 2015, and Defendants served Initial invalidity contentions in January 2016.  The parties engaged in written discovery, massive document production totaling over a million pages, and prepared for depositions. While TT had noticed depositions to go forward in February and March 2016, Defendants delayed in producing requested document discovery and source code until April 2016, causing the parties to agree to push the depositions back until after TT had reviewed the source code and documents.

### C.    The Second Round of CBMs and the Third Stay

Despite the CBM procedure being available to TradeStation and IB since September 2012 and despite TradeStation and IB having prior notice of and the opportunity to join TD's CBM petitions, TradeStation and IB only began preparing their own CBM petitions once it became clear that the district court litigation would continue after the first round of CBMs and the second stay.  For

directed to patent-eligible subject matter.  2015 WL 774655, at *4-5.

instance, after the district court denied TradeStation and IB's request to continue the stay, TradeStation and IB began filing new CBM petitions on a rolling basis. Particularly, from July 2015 to June 2016, TradeStation and/or IB filed CBM petitions for the ''304 (Appx27389), '556 (Appx27424), '056 (Appx27906-27995), '411 (Appx27549-27640), '132 (Appx27457-27547), '055 (Appx27642-27724), '996 (Appx27726-27812), '999 (Appx27814-27904), '374 (Appx28868-28922), '416 (Appx28923-29020), '768 (Appx29021-29101), and '382 (Appx29102-29182).[18]  In February 2016, when the PTAB had only instituted two of the twelve eventual CBM petitions filed, TradeStation and IB again moved the district court for what would amount to the third stay since the litigation commenced in 2010.  Appx27034.  The district court granted this third stay in May 2016.  Appx1.

TT moved for reconsideration of the district court's order to at least allow the parties to conclude discovery that had been teed up and would be beneficial at the PTAB.  At the hearing on TT's motion, the district court expressed frustration based on its belief that it had no choice but to stay the case.  In particular, when

---

[18] TradeStation and IB have only recently filed the eleventh and twelfth CBM petition of the twelve patents-in-suit on June 3 and June 13, 2016, respectively despite representing to TT and the district court in March 2016 that they would shortly file CBM petitions for the remainder of the twelve patents-in-suit.  The district court relied on this representation (inappropriately) in staying the entirety of the litigation.

referencing the dilatory tactics employed by TradeStation and IB to date, the

district court stated:

> It's enough to make me not want to be -- this case alone is enough to
> make me not want to be a patent pilot program judge, because it
> doesn't move. It's strategically stopped constantly. And it's frustrating.
> I agree that the case -- the chances of the case going away completely
> are not realistic, and so I'm going to grant in part the motion to
> reconsider.

Appx29303.  The district court allowed limited additional discovery to occur that

had already been agreed to and the parties were on the eve of completing.  The

district court permitted such further discovery based on its belief that "the

discovery materials will be beneficial, both when the case resumes and also before

the PTAB."  Appx29334.  This appeal followed.

To date, the PTAB has instituted CBM Review on six of the twelve CBM

petitions filed, namely the CBM petitions for the '556 (Appx27424-27425), '056

(Appx28130-28131), '411 (Appx28213-28214), '132 (Appx28169-28170), '304

(Appx27389-27390), and '556 (Appx27424-27455) patents.  The PTAB has

instituted CBM Review on § 101 grounds for each of these six patents, and § 103

grounds for the '056, '411, '055, and '132 patents. [19]  CBM Review is currently

---

[19] Thus, two of the patents undergoing CBM Review (the '304 and '556 patents) are
being reviewed solely for subject matter eligibility under 35 U.S.C. § 101.  A
different judge in the same district court has already concluded that the '304 patent
claims (and the '132 patent claims) are not directed to an abstract idea and,
independently, included elements sufficient to transform the nature of the claim into

instituted on six of the twelve patents-in-suit against IB, and on five of the ten

patents-in-suit against TradeStation.

---

a patent-eligible application.  *CQG*, 2015 WL 774655, at *4-5.  This patent-
eligibility issue is presently pending before this Court in Case No. 16-1616.

## SUMMARY OF THE ARGUMENT

The district court erred by staying this case a third time pending CBM Review.  While the district court expressed frustration because the pending case "doesn't move" and is "strategically stopped constantly," the district court erred by not weighing this strategic delay more heavily in analyzing the stay factors.  In fact, this case has been languishing in the courts for over six years with no end in sight.  TradeStation and IB have done everything in their power to litigate this case in a piecemeal fashion and interject delay and further expense, including abusing the CBM program and its stay provision to further these goals.  The factors enumerated in Section 18(b)(1) of the AIA thus weigh heavily against a stay, especially in view of a few crucial facts in this case.

First, TradeStation and IB strategically chose not to join a prior round of CBM petitions in this very litigation filed by a co-defendant (TD) despite have advance notice of TD's intent to file.  TradeStation and IB chose not to join these CBM petitions so that they would not be subject to estoppel, and even highlighted that fact to this court during the prior appeal of a stay.   TradeStation and IB are now reaping the benefits of this strategy to TT's detriment by having a second-bite at the invalidity apple.

Second, rather than filing their CBM petitions within days, or even weeks of one another as TD did with the first round of CBMs, TradeStation and IB have

spread out their twelve CBM petitions over an entire year so that any stay resulting therefrom would extend until disposition of the very last CBM proceeding, ensuring the stay lasts for years.  This cuts against the very heart of the AIA, which intended to reduce the ability to use post-grant procedures to harass patent owners or serially challenge patents' validity.

Third, TradeStation and IB have caused much of the delay in this six-year case, first, with out of turn summary judgment motion practice and a corresponding stay (which has failed to invalidate even one of the twelve patents-in-suit); second, by failing to join TD's CBM petitions two years ago but now proceeding with CBM petitions on the same patents on the same grounds; and third, once discovery commenced following the stay of the first round of CBMs, by objecting to producing even basic patent infringement evidence regarding product operation and use, forcing TT to file three motions to compel, which the district court never addressed.  Yet the "stage of the case" was held against TT, and because it was in its "early stages" the district court found that a stay was warranted.  This was error.

Fourth, little to no simplification results from a stay when only six CBM proceedings have been instituted, two of which are solely on § 101 grounds, which this Court is poised to address in a co-pending appeal.  Indeed, the stay multiplies these proceedings (as it has in the past) and increases the burden of litigation on

the parties and the district court.

In sum, each of the relevant factors weighs against a stay.  A stay of the present case under these circumstances does not simplify anything—it merely encourages abuse of the system to the advantage of TradeStation and IB.

# ARGUMENT

## I.    STANDARD OF REVIEW

Prior to the AIA, this Court reviewed decisions on motions to stay pending USPTO proceedings under the abuse of discretion standard.  *See Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers Inc.*, 767 F.3d 1383 (Fed. Cir. 2014).  The AIA, however, provides that "The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo."  AIA § 18(b)(2).  Although de novo review is not compelled by this language, de novo review is the "only standard mentioned in the statute."  *VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1310 (Fed. Cir. 2014).  While the district court erred in imposing a stay under either standard, the circumstances present here justify a de novo standard of review.

## II.    THE DISTRICT COURT ERRED IN GRANTING A STAY

The district court erred when it imposed a sweeping stay of the consolidated cases for all twelve patents-in-suit. The AIA governs stays pending CBM review, setting forth identifies four requisite factors:

(A)    whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B)    whether discovery is complete and whether a trial date has been set;

(C)    whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D)    whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1). TradeStation and IB, as the parties seeking the stay, have the burden to show a stay is warranted. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

The district court erred by granting a stay pending just six instituted CBM Proceedings out of twelve patents-in-suit in view of TradeStation and IB's abuse of the CBM procedure. TradeStation and IB's gamesmanship surrounding these CBM proceedings, coupled with their delay tactics over the course of the entire litigation have put TT at an unprecedented disadvantage.

In addition to erring by not fully appreciating TradeStation and IB's abuse and gamesmanship of the CBM proceedings, the district court also erred by weighing the stage of the case in favor of a stay despite that it was TradeStation and

28

IB's own tactics that put the case at such a stage. As such, TT has had to bear the consequences of these tactics twice now: first, by not having its infringement claims against direct competitors TradeStation and IB resolved in an efficient manner, which compounds the prejudice to TT in not being able to exclude these infringers from the market as well as ties up resources preventing TT from asserting its rights against other competitors; and second, by suffering now a third stay of this case *because* TradeStation and IB have prevented the case from sufficiently moving forward.

When these facts are properly considered, the factors enumerated in Section 18(b)(1) of the AIA weigh heavily against a stay.

### A.    The District Court Erred By Not Weighing TradeStation's and IB's Abuse of the CBM Process And The Clear Tactical Advantage Awarded (Third Factor)

This third stay has rewarded TradeStation and IB's abusive use of the AIA to delay this case. This district court erred by not weighing significantly enough the extent of the tactical advantage awarded to TradeStation and IB and the harm caused to TT. This Court should reverse the stay based on this factor alone.

The AIA was intended to "[r]educe the ability to use post-grant procedures for abusive serial challenges to patents," and prohibit "attempts to use the transitional program against patent owners in a harassing way." *See* Appx24734-24739, Appx25087-25089. Indeed, this Court has recognized that "in order to

realize Congress's intent to establish an *alternative* to district court litigation for CBM issues, parties must file CBM petitions in a manner that facilitates this goal." *Smartflash LLC v. Apple Inc.*, 621 Fed. Appx. 995, 1003 (Fed. Cir. 2015) (unpublished) (emphasis in original). TradeStation and IB have not filed CBM petitions in a manner that facilitates the CBM procedure being used as an alternative to litigation. Nor have they filed CBM petitions in a manner that renders that procedure cheaper or faster than district court litigation. Rather, TradeStation and IB deliberately delayed filing any CBM petitions for over three and a half years while letting serial challenges to TT's patents run their course. And once TradeStation and IB filed their own CBM petitions, they strategically engineered them to inject as much delay as possible on the litigation.

First, TradeStation and IB's choice in not in joining in any of TD's earlier-filed CBM Petitions, despite having plenty of chances, and despite TD and IB even being represented by the same counsel, was an obvious dilatory move. The district court erred when it "declin[ed] to find any dilatory intent." Appx11. But such intent is the only reasonable inference that can be drawn from the facts: TradeStation and IB knew about the CBM procedure, they knew that TD was going to file CBM petitions before TD even filed these petitions, and they failed to join or file their own petitions.

As further evidence of this intent, TT asked TradeStation and IB (as well as

30

the other defendants) to be estopped by the outcome of the CBM Petitions, but TradeStation and IB refused.  They made a special point to highlight to this Court that they would not consent to be subject to any estoppel that would attach as a result of TD's CBM petitions.  Appx28706.  This demonstrates that TradeStation and IB wanted two bites at the invalidity apple.  Specifically, they let TD take its turn at attempting to invalidate TT's patents, and failing this, TradeStation and IB would take (and indeed are taking) their turn unencumbered by the estoppel affects attendant to normal CBM procedures.  Multiple opportunities to pursue a single defense is "a clear tactical advantage."  *Smartflash*, 621 Fed. Appx. at 1003.

Even if it were justifiable to not join or file CBM petitions on a patent while a co-defendant proceeded alone in CBM proceedings against that patent, TradeStation and IB have no excuse for waiting three and a half years to file CBM petitions on the other patents-in-suit that have never been the subject of a CBM petition.[20]  Indeed, the defenses presented in these CBM petitions are not even new defenses and the petitions include no new arguments.  These defenses were known by TradeStation and IB well before CBM Review was enacted by Congress.  Further, that TradeStation and IB have withheld numerous defenses from the CBM Petitions that they easily could have raised[21] demonstrates that

---

[20] These are the '996, '999, '556, '374, '768, and '416 patents.

[21] These defenses include, for instance, GL TradePad and ePit alleged prior art, and

TradeStation and IB were intent on serially litigating this case in different forums rather than reducing the burden on the district court. To be sure, there is no deadline to file a CBM petition, but the timing and manner of filing CBM petitions can nonetheless confer a tactical advantage on defendants. *Id.* (recognizing that "there is no statutory deadline to file a CBM petition, unlike other post-grant proceedings, but we nevertheless conclude the timing of the petitions in this case created a tactical advantage for [defendant]").

The district court's opinion in finding no dilatory intent is also at odds with its comments at a hearing just days after entering the stay order. In the hearing on TT's motion for reconsideration, the district court explained its frustration with TradeStation and IB's tactics:

> It's enough to make me not want to be -- this case alone is enough to make me not want to be a patent pilot program judge, because it doesn't move. It's strategically stopped constantly. And it's frustrating. I agree that the case -- the chances of the case going away completely are not realistic, and so I'm going to grant in part the motion to reconsider.

Appx29303. Thus, the district court clearly recognized that TradeStation and IB's motives were tactical and designed to provide a strategic advantage. The district

---

the '411 written description argument that Defendants heralded to the district court as dispositive in their February 2014 renewed motion for summary judgment. Appx22580-22585.

court should have afforded TradeStation and IB's "strategic stopping" greater weight.

Further, TradeStation's and IB's conduct in the CBMs evidence a motive to use the AIA stay provision to gain a tactical advantage.[22]  In the CBMs, TradeStation and IB have objected to TT's reliance on highly relevant documents and testimony from the litigation that TradeStation and IB produced.  TradeStation and IB are attempting to shield the PTAB from reviewing information in their own files that they already produced in the litigation that undermines the very positions that they have taken in the CBMs.  TradeStation and IB are using the protective order entered in the district court litigation to block TT from introducing the evidence directly in the CBMs and have refused to produce such information directly in the CBMs certainly because of its relevance and harm to their case.  Defendants' actions show an interest in gamesmanship and delay over the pursuit of truth and justice.

As still further evidence of a dilatory motive, in each and every CBM petition currently pending, TradeStation and/or IB have set forth an invalidity position under 35 U.S.C. § 101.  But resolving § 101 issues at the PTAB is unquestionably slower and more expensive that doing so at the district court.  As

---

[22] Although this point was not before the district court, this Court may take judicial notice of Defendants' conduct. *VirtualAgility Inc.*, 759 F.3d at 1314 (taking judicial

such, using CBM procedures to address § 101 issues is contrary to the spirit and intent of the CBM proceedings, which were supposed to provide a "cheaper, faster alternative" to district court litigation. For instance, while the CBM process concludes in about 18 months from when a petition is filed[23], resolving § 101 issues at the district court such as in a summary judgment motion, takes far less time. Indeed, TT recently participated in one such endeavor in the *CQG* case, where Judge Coleman reached a decision finding two of TT's patents[24] were directed to patent-eligible subject matter after about one month of briefing and a short oral argument. 05-CV-4811, 2015 WL 774655, at *5. Choosing to litigate § 101 in the PTAB when a speedier, less costly option exists in the district court serves to only inject further delay into these proceedings.

Second, notwithstanding the delay caused by TradeStation and IB's tactical refusal to join the first round of CBMs, TradeStation and IB have strategically engineered this second round of CBMs to inject as much additional delay in the process as possible. In particular, while TD filed its five CBM petitions in this case within one day of one another, TradeStation and IB have tactically staggered

---

notice of occurrences at the PTAB because it was publically accessible).

[23] This includes three months for the patent owner preliminary response, 37 C.F.R. § 42.207, three months for the PTAB to decide whether to institute, and 12 months for a final written decision measured from the date of institution, 37 C.F.R. § 42.300(c).

[24] The '304 and '132 patents – which are subject to CBM Review here.

their filings of this second round of CBM petitions as shown by the table below.

Appx27389, Appx27424, Appx27906-27995, Appx27549-27640, Appx27457-

27547, Appx27642-27724, Appx27726-27812, Appx27814-27904.

| CBM Petition for '304 Patent | Filed July 20, 2015 |
|---|---|
| CBM Petition for '556 Patent | Filed August 12, 2015 |
| CBM Petition for '056 Patent | Filed September 2, 2015 |
| CBM Petition for '411 Patent | Filed September 11, 2015 |
| CBM Petition for '132 Patent | Filed September 11, 2015 |
| CBM Petition for '055 Patent | Filed October 23, 2015 |
| CBM Petition for '996 Patent | Filed February 9, 2016 |
| CBM Petition for '999 Patent | Filed February 9, 2016 |
| CBM Petition for '374 Patent | Filed March 29, 2016 |
| CBM Petition for '768 Patent | Filed April 12, 2016 |
| CBM Petition for '416 Patent | Filed June 3, 2016 |
| CBM Petition for '382 Patent | Filed June 13, 2016 |

By doing so, TradeStation and IB have maximized the length of a stay – well

beyond the one year for which other CBM stays last based on the one-year

timeframe within which the PTAB must complete CBM Reviews.  37 C.F.R. §

42.300(c).  For instance, when CBM Review concludes on the first six patents-in-

suit, CBM Review may just be getting started on the next four patents-in-suit,

prolonging the stay yet another year.  These tactics are clearly not what Congress

intended to allow when it provided for stays pending CBM Review.[25]

---

[25] *See*, *e.g.*,  Appx25089 (stmt. of Sen. Grassley) (recognizing the AIA was intended to "[r]educe the ability to use postgrant procedures for abusive serial challenges to patents," and prohibit "attempts to use the transitional program against patent owners in a harassing way"); Appx24741 (stmt. of Sen. Schumer) (remarking that the CBM review program was "designed to provide a cheaper, faster alternative to

Third, this stay compounds the undue prejudice to TT because it is undisputed that TT and TradeStation/IB are direct competitors. Appx28308-28350, at ¶¶ 9-10, 13-14. TT continues to be significantly harmed from each stay of this six year-old case because TT practices the patents-in-suit by making, using, and selling its MD_Trader product in direct competition with TradeStation and IB. *See VirtualAgility*, 759 F.3d at 1318 (agreeing with district court that competition between parties weighs in favor of finding undue prejudice); *see also* Appx28308-28350, at ¶¶ 6-7, 13. TT's inability to timely resolve this case against its competitors continues to result in a loss of market share, price erosion, loss of goodwill, and ties up TT's resources that would otherwise be put toward pursuing action against still other infringing competitors. *See* Appx28352-28359. This factor weighs strongly against a third stay because TradeStation and IB's tactics run counter to the purpose of the AIA, which was not intended to target patent owners who employ hundreds of workers through the development and commercialization of such patents. *See* Appx28308-28350, at ¶¶ 4, 6, 7, 13.

The unique circumstances of this case and the particular actions by the parties in this case makes the prejudice suffered by TT real and particularized. This is not a general argument that the passage of time fades memories or would hypothetically result in the loss of evidence. Actual evidence has already been lost

district court litigation").

in this case during the previous stay. Indeed, IB has no operable samples before May 2012, and TradeStation has no operable samples prior to February 2010. *See* Appx27030-27033. Now the only way to obtain direct evidence of product functionality is via source code, which TradeStation and IB first objected to producing – even under the protective order – but recently have produced with many stipulations. Source code review and analysis to determine functionality alone is much more time consuming and costly than using it with operable samples.

Further, with respect to infringement of the method claims, TradeStation and IB do not track how customers use the products, and thus TT must rely on testimonial evidence from Defendants' customers. Yet searching for witnesses who remember how they traded in various interfaces over 10 years ago (e.g., whether they used drag and drop, confirmation windows, how the price axis was set) is difficult – exceedingly so with each and every iteration of a stay. This serves to only compound the amount of discovery needed to prove up infringement of the method claims. For example, nonparty customers are unlikely to maintain trading records indefinitely, and traders' memories about the products they used and the settings they used with particular products are likely to fade, just as they have in other cases. Congress did not intend for parties to be able to use the AIA stay provision as a means to run out the clock on evidence and witnesses'

memories.

Finally, the district court erred in relying so heavily on the fact that TT did not move for a preliminary injunction (although TT is seeking a permanent injunction and TT has already won injunctive relief in the past—both in court and as a result of settlement agreements).  Appx11-13.  Indeed, this is irrelevant to whether TT will suffer prejudice from further delay, as noted by this Court in *VirtualAgility*. 2014 WL 94371, at *7.  As the case is over 6 years old and infringement goes back nearly 10 years, any further delay only compounds the prejudice to TT.

### B.    The District Court Erred By Weighing The Stage of the Case In Favor of a Stay When This Case Is Six Years Old And There Have Been Several Stays Already (Second Factor)

The purpose of the second factor is to encourage stays for cases in their early stages where CBM Review could be a more efficient route than litigation. *See* Appx24741 (stmt. of Sen. Schumer remarking that the CBM Review program was "designed to provide a cheaper, *faster* alternative to district court litigation").  That is not the case here.  The district court erred by weighing this factor in favor of a stay despite that TradeStation and IB have caused the case to remain at a stage characterized by the district court as "in its early stages."  Appx9.  Although discovery has not been completed and no trial date has been set, this case cannot fairly be characterized as being in its "early stages."  In fact, this would be the

***third*** stay issued in this six year-old litigation.  Appx6417-6421.

To date, thousands of documents have been produced, written discovery exchanged, and depositions taken.  TradeStation and IB have issued letters of request, and TT's experts and counsel have spent considerable effort in analyzing information and preparing voluminous contentions and responses.  TradeStation and IB's "stop and go" tactics lead to great inefficiencies for the parties' counsel and experts.

Notwithstanding that more work remains in this case, TT cannot be held accountable nor should it be punished for TradeStation and IB's own delay in providing requested discovery.  Specifically, TT had reached an impasse with TradeStation and IB on multiple discovery issues, such as source code production and production of infringement evidence identifying customers.  These discovery issues held up the initial depositions of TradeStation and IB.  The parties addressed these discovery issues in multiple fully briefed discovery motions before the district court.  But the district court never addressed these discovery motions.  Appx28867.  Indeed, had they been resolved, the parties could have proceeded with depositions and other discovery much sooner and the case would progressed beyond a point characterized by the district court as "in its early

stages."[26]  Appx9.  Thus, it was error for the district court to weigh against TT the fact that the district court had not resolved the many discovery disputes that were holding up the case's progression.

But even notwithstanding this recent bout of delay, this case has been pending at the district court for years, primarily due to TradeStation and IB's piecemeal approach to this litigation, including particularly the early review of SJ issues with respect to a few patents while staying discovery.  Again, it was TradeStation and IB's choice to pursue early SJ practice on several patents-in-suit (none of which stand invalidated as a result therefrom), and then stand idly by while TD pursued CBMs on the exact same issues and some of the exact same patents on which TradeStation and IB now seek review.[27]  This piecemeal approach unquestionably delayed this case.  And given that this delay has been by TradeStation and IB's own hand, it was error for the district court to weigh this factor against TT.  *See Smartflash*, 621 Fed. Appx. at 1002 ("A party cannot wait to assert an *available* defense as litigation marches on and then argue that the

---

[26] These depositions finally went forward in early June 2016 despite being noticed in February 2016 and despite the district court not having resolved the parties' many discovery disputes.

[27] Indeed, all every CBM petition currently pending, TradeStation and/or IB have set forth an invalidity position under 35 U.S.C. § 101.  But the district court and this Court would have resolved any § 101 issue much faster than the PTAB, as Judge Coleman's decision in *CQG* was reached after around a month of briefing and an oral argument.

stage of litigation facing the court is irrelevant to its right to a stay.") (emphasis in original); *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, 3:14-CV-3262-M, 2015 WL 1879747, at *5 (N.D. Tex. Apr. 24, 2015) (denying defendants' bid for a stay and finding "litigation to be further along than [defendant] suggests, especially given that the delay is due in part to [defendant's]" conduct).  Further,

### C.    The District Court Erred By Finding That A Stay Would Materially Simplify Issues or Streamline Trial Because Only Six of Twelve Patents-In-Suit Are Subject to CBM Proceedings (First Factor)

The district court erred when it decided that the first factor, i.e., simplification of issues and streamlining of trial, weighed in favor of a stay.  This factor weighs in favor of a stay when the CBM Review could dispose of the entire litigation. *VirtualAgility Inc*., 759 F.3d at 1314 (finding it "significant that the PTAB [Patent Trial and Appeal Board] granted CBM Review on all asserted claims of the sole asserted patent"). However, a stay should not be imposed when a PTAB proceeding will not have a significant impact on the issues in the case. *Davol, Inc. v. Atrium Medical Corp*., No. 12-958-GMS, 2013 WL 3013343, (D. Del. June 17, 2013) (denying stay where IPR was petitioned for only two of three patents and issues such as infringement and damages would not be addressed by IPR).

Here, the CBM Review will not dispose of the entire litigation, or even a significant portion of the litigation.  The instituted CBM Review proceedings

involve just six out of twelve asserted patents in this case. Indeed, the district court even "agree[d] that the case -- the chances of the case going away completely are not realistic." Appx29303. It is thus undisputed that the CBMs are unlikely to eliminate the work yet to do. Thus, in view of the district court recognizing this fact yet still finding that this factor weighed in favor of a stay demonstrates that district court erred by applying too low a threshold for finding simplification under this factor.

Further, with respect to two of the patents – the '304 and '556 patents – only § 101 grounds are at issue, and these grounds have previously been rejected in a related case (the *CQG* case) with respect to the '132 patent and the '304 patent.[28] Thus, there are only four patents out of twelve that are subject to review by the PTAB on grounds (§§ 101, 103) that have not already been decided by a court. Judge Coleman's § 101 decision has been recognized as sound by the industry and TT fully expects that it will be upheld by this Court in *Trading Techs. Intl., Inc. v. CQG, Inc.* (pending appeal no. 16-1616). For example, on March 10, 2016, this Court heard oral argument in *Chicago Board Options Exchange v. Intl. Securities Exchange*, Case No. 2015-1728, where Judge O'Malley aptly discussed Judge

---

[28] The '556 patent has different inventors than the '304 and '132 patents, but the '556 patent also claims a novel graphical user interface tool that can be used to trade. Thus the district court's logic upholding the graphical user interface claims of the '304 patent applies equally to the '556 patent.

Coleman's opinion with the appellee:

> **J. O'Malley**: I know the case isn't binding on us, but do you see a distinction between this case and *Trading Tech*.?
>
> **Mr. Murray** (Counsel for International Securities Exchange, LLC): Yes, I see a big distinction. *Trading Technologies* what they claimed was a unique graphical interface . . . so that is rooted in the technology, it's a graphical user interface . . . that had no analog in the open outcry market . . . .

Oral Argument at 20:16, *Chi. Bd. Options Exch. v. Intl. Secs. Exch.*, No. 2015-1728 (Fed. Cir. argued Mar. 10, 2016), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1728.mp3.

Moreover, the district court erroneously concluded that "the PTO . . . expressly determined that all of the challenged claims [in the '304, '132, '411, '056, '556, and '055 patents] are more likely than not unpatentable." Appx5. However, the USPTO made no such express determination. The district court misread the standard for instituting CBM Review, erroneously concluding that because the USPTO instituted CBM Review at all necessarily means that the claims are more likely than not unpatentable. The plain language of the statute reveals that this is squarely not the case. In particular, in order to institute a CBM Review proceeding, the USPTO must determine that "the information presented in the petition filed under section 321, *if such information is not rebutted*, would demonstrate that it is more likely than not that at least 1 of the claims challenged in the petition is unpatentable." 35 U.S.C. § 324(a) (emphasis added). As such,

institution of CBM Review does not constitute anything close to "an express[] determin[ation]" that the claims are more likely than not unpatentable.  It merely constitutes a determination that the arguments presented *would* demonstrate more-likely-than-not-unpatentability *if such arguments were not rebutted*.

It was further erroneous for the district court to rely on TradeStation and IB's March 2016 representation that they would file CBM petitions on the two remaining patents-in-suit as a basis for finding that a stay would simplify this case. *See* Appx6.  First, TradeStation and IB only recently followed through with this promise, having only filed the last two CBM petitions in June 2016.  Inexplicably, however, instead of directing its resources toward fulfilling this promise earlier, TradeStation filed a CBM petition on a totally different TT patent asserted in an entirely separate litigation even before filing the CBM petition on the twelfth patent-in-suit in the present case.  Second, given that there was no date certain by which TradeStation or IB were ordered to file the remaining two CBM petitions, the district court essentially awarded TradeStation and IB a tactical advantage by finding that the mere promise to file more CBM petitions counsels in favor of a stay now but that TradeStation and IB did not actually have to file a petition until it suited them.  Indeed, TradeStation and IB were advantaged by waiting as long as possible before filing this petition in order to prolong this stay as much as possible.  As such, finding that an unbounded and indefinite promise to file a

CBM petition somehow simplifies the case is error.

In sum, the district court erred by weighing this factor in favor of a stay because six of twelve patents-in-suit are not subject to any instituted CBM proceedings, and one patent is not even subject to a CBM petition. Further, two of the six patents-in-suit are only subject to CBM Review on § 101 grounds, which this Court is addressing in a co-pending appeal. Thus, on eight of the twelve patents-in-suit, the PTAB is not providing any potential simplification of issues yet TradeStation and IB are benefiting from a stay nonetheless.

### D. The District Court Erred By Finding That A Stay Reduces the Litigation Burden for the Parties or This Court (Fourth Factor)

Finally, the district court incorrectly found that the fourth factor—burden of litigation—favored a stay. Appx13. The district court erred here for the same reasons discussed above with respect to the first factor. *See, e.g. Segin Sys., Inc. v. Stewart Title Guar. Co*., 30 F. Supp. 3d 476, 485 (E.D. Va. 2014) (in denying Defendant's motion for stay, applying analysis from first factor). TradeStation and IB's strategy has served to increase the litigation burden on the parties – not reduce it. Thus, this third stay increases the burden of the litigation to the parties and the district court. In particular, TradeStation and IB have compounded the litigation burden and costs by subjecting the patents to cumulative reviews of prior challenges, serially challenging the patents-in-suit, and imposing further delay. And the PTAB trials on six different patents are quite costly as they involve expert

depositions, hearings, and other discovery analogous to district court litigation.

Any attempt by TradeStation and IB to play victim is unavailing.  *See* Appx27061 ("TT has been a contentious litigant").  TradeStation and IB complain of litigating at the PTAB and at the district court, yet TradeStation and IB chose to expand part of this litigation to the PTAB and at the same time, TradeStation recently sued TT for patent infringement based on a patent entitled "System, Method and Apparatus for Monitoring and Execution of Entry and Exit Orders".  Appx28294-28303.  TradeStation's argument that the district court should stop all litigation to challenge TT's patents under § 101 at the PTAB while at the same time, assert a patent claiming "A method for automating trading strategies" is telling.  TradeStation and IB clearly want to litigate—just in a way that provides them with the greatest tactical advantage.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The district court erred in staying this case a third time pending CBM Review, where TradeStation and IB had the chance, but strategically chose not to join a prior round of CBM petitions.  Nonetheless, they benefited from a prior stay of this case and are now attempting to benefit from yet another stay of this case to the undue prejudice of TT.  The factors enumerated in Section 18(b)(1) of the AIA weigh heavily against a stay.  Therefore, this Court should reverse the district court's ruling staying this case a third time pending CBM Review, and remand the case.

Respectfully submitted,

Date:  July 25, 2016          By:    /s/ Cole B. Richter
                                     Leif R. Sigmond, Jr. (ID No. 6204980)
                                     (sigmond@mbhb.com)
                                     Michael D. Gannon (ID No. 6206940)
                                     (gannon@mbhb.com)
                                     Jennifer M. Kurcz (ID No. 6279893)
                                     (kurcz@mbhb.com)
                                     Cole B. Richter (ID No. 6315686)
                                     (richter@mbhb.com)
                                     **McDonnell Boehnen**
                                     **Hulbert & Berghoff LLP**
                                     300 South Wacker Drive
                                     Chicago, Illinois 60606
                                     Tel.: (312) 913-0001
                                     Fax: (312) 913-0002

Steven F. Borsand (ID No. 6206597)
(Steve.Borsand@tradingtechnologies.com)
**Trading Technologies International, Inc**.
222 South Riverside
Suite 1100
Chicago, IL 60606
Tel: (312) 476-1000
Fax: (312) 476-1182

**Attorneys for Plaintiff,**
**TRADING TECHNOLOGIES**
**INTERNATIONAL, INC.**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on   July 25, 2016

by:

☐ U.S. Mail

☐ Fax

☐ Hand

☒ Electronic Means (by E-mail or CM/ECF)

| | |
|---|---|
| Cole B. Richter | /s/ Cole B. Richter |
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Law Firm | MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP |
| Address | 300 SOUTH WACKER DRIVE, SUITE 3200 |
| City, State, Zip | CHICAGO, ILLINOIS 60606 |
| Telephone Number | (312) 913-0001 |
| Fax Number | (312) 913-0002 |
| E-Mail Address | richter@mbhb.com |

NOTE: For attorneys filing documents electronically, the name of the filer under whose log-in and password a document is submitted must be preceded by an "/s/" and typed in the space where the signature would otherwise appear. Graphic and other electronic signatures are discouraged.

Reset Fields

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Opening Brief of Plaintiff-Appellant Trading Technologies International, Inc. complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B)(i) because it contains 9,806 words as measured by the word-processing software used to prepare this brief, excluding portions exempted from this requirement by FED. R. APP. P. 32(a)(7)(B)(iii) and FED. CIR. R. 32(b).